UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **LONNIE MARIE TONEY** | * | **CIVIL ACTION NO. 10-0585** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Lonnie Marie Toney filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on January 24, 2008. (Tr. 83-88, ). She alleged disability as of September 10, 2007, because of bilateral carpal tunnel syndrome, left arm pain, dizziness, bronchitis, and blurry vision. (Tr. 98, 102). The claim was denied at the initial stage of the administrative process. (Tr. 43-48). Thereafter, Toney requested and received a January 30, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 17-42). However, in a May 12, 2009, written decision, the ALJ determined that Toney was not disabled under the Act, finding at Step Two of the sequential evaluation process that she did not suffer from a severe impairment or combination of impairments. (Tr. 4-12). Toney appealed the adverse decision to the Appeals Council. On February 19, 2010, however, the Appeals Council

denied Toney's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On April 12, 2010, Toney sought review before this court. She alleges the following errors,

(1) the ALJ's Step Two determination is not supported by substantial evidence; and

(2) the ALJ failed to properly evaluate plaintiff's subjective complaints and credibility.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional

>  capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**I. The ALJ's Step Two Determination is Supported by Substantial Evidence and is Free of Legal Error**

The ALJ determined at Step One of the sequential evaluation process that Toney had not engaged in substantial gainful activity during the relevant period. (Tr. 9). At Step Two, he determined that Toney suffers medically determinable impairments of hypertension, arthritis, and right carpal tunnel syndrome. *Id*. He concluded, however, that the impairments, either individually or in combination, were not severe, as required by the Act.

Under the current regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a).[1] The Fifth Circuit has held, however, that

---

[1] "Basic work activities," includes such activities as walking; standing; sitting; lifting; pushing; pulling; reaching; carrying; handling; seeing; hearing; speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

4

the "significantly-limit" standard must be read in conjunction with an earlier regulation that defined a "non-severe impairment" as a "slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citations omitted). In other words, "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citing *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984).[2] Moreover, the Fifth Circuit presumes that the Commissioner applied an incorrect severity standard unless he references the correct standard in his decision, or includes an express statement setting forth the Fifth Circuit standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Nonetheless, remand on this basis is required "only where there is no indication the ALJ applied the correct standard." *Id*.

In this case, plaintiff argues that although the ALJ referenced *Stone* and the "slight abnormality"standard, he failed to apply the standard in practice. Plaintiff faults the ALJ for reciting the "significant" limitation language of the current regulation in his conclusion that she does not suffer from a severe impairment(s). However, the Fifth Circuit has not declared the current regulation facially invalid. *Anthony v. Sullivan*, 954 F.2d 289, 294 n5 (5th Cir. 1992). Here, the ALJ recited the language of the current regulation, but also included the "slight abnormality" definition of the regulation adopted by the Fifth Circuit. (Tr. 11). Moreover, the ALJ's Step Two determination is supported by substantial evidence under the "slight abnormality" standard.

---

[2] The *Estran* court adopted the definition from the Eleventh Circuit's decision in *Brady v. Heckler*, which, in turn, incorporated the version from a 1980 rephrasing of the "slight abnormality" definition by the Appeals Council. *Estran*, 745 F.2d at 342 (citing *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984).

5

The foundation for the ALJ's Step Two determination is grounded upon a February 23, 2008, physical examination administered to plaintiff by consultative physician, Michael O'Neal, M.D. (Tr. 184-187). At the time of the examination, Toney's primary complaints were carpal tunnel syndrome, bronchitis, and dizziness. *Id*. She also reported left shoulder and left knee pain, plus other joint pain. *Id*. She stated that she still could write, but experienced swelling and pain in the right hand. *Id*. She explained that her right hand hurt so bad that it caused her to frequently drop things. *Id*. She reported no difficulties with daily living, however. *Id*. Her medications were Aleve and Albuterol. *Id*. She denied syncope, seizures, weakness, tremor, sensory loss, or dysfunction. *Id*. Upon examination, her lungs were clear of rales, ronchi, wheezes, or rubs. *Id*. She exhibited positive tenderness in her shoulders, bilaterally, upon palpation and with movement. *Id*. She also experienced pain on palpation and with range of motion in her hands and fingers. *Id*. However, she retained full range of motion of all extremities and good strength. *Id*. She had a normal gait, and was able to bend and squat without difficulty. *Id*. She demonstrated 5/5 strength bilaterally, with adequate fine motor movements, dexterity and ability to grasp objects. *Id*. Her visual acuity was 20/40 in both eyes, without glasses. *Id*. Her light touch sensation was subjectively diminished in both hands and fingers, but this was not dermatomal and was symmetrical. *Id*. Otherwise, light touch, pain, position, and vibratory sensation were intact throughout. *Id*. A chest x-ray indicated that her lung fields were clear, with no evidence of pulmonary edema, infitrates, or masses. *Id*. Degenerative changes of the thoracic spine were noted. *Id*. O'Neal diagnosed hypertension, carpal tunnel syndrome, and arthritis. *Id*. Objectively, plaintiff had no apparent dyspnea upon examination. *Id*. He noted that she had a normal range of motion throughout her extremities. *Id*. She also put forth marginal effort on her eye examination. *Id*. O'Neal remarked that Toney had some loss of sensation bilaterally in her hands, but it was not dermatomal, and was difficult to

quantify because it was based upon her subjective feelings. *Id*. Despite these complaints, O'Neal opined that Toney could sit, walk, and/or stand for a full workday, plus lift and carry objects without restrictions. *Id*.

In his decision, the ALJ stated that he afforded "great weight" to Dr. O'Neal's opinion because the record was devoid of any opinion from a treating physician regarding the effects of plaintiff's impairments. (Tr. 11). Plaintiff argues that the ALJ erred in this regard because Dr. O'Neal did not have the benefit of some 70 odd pages of additional medical records that plaintiff subsequently submitted for inclusion into the administrative record, prior to the ALJ's decision.

In particular, plaintiff points to a May 14, 2008, EMG/Nerve Conduction Study that indicated severe right carpal tunnel syndrome, but mild carpal tunnel syndrome on the left side. (Tr. 229). The physician interpreting the study, Dr. Thompson, opined that surgery was reasonable on the right side, but because of the nature of the patient's complaints, he did not anticipate complete resolution of her symptoms. *Id*. The physician further recommended continued non-surgical treatment for plaintiff's left side. *Id*.

Thereafter, on July 15, 2008, Toney underwent surgery for right carpal tunnel release. (Tr. 192-193). By August 7, 2008, she exhibited a full range of motion with the right hand. (Tr. 200). Further, by August 21, 2008, her sensation was within normal limits. (Tr. 234). On December 15, 2008, plaintiff reported zero complaints, except for low back pain. (Tr. 239). Moreover, on January 26, 2009, plaintiff again was doing fine, with zero complaints, except for back pain. (Tr. 238). Thus, the subsequent medical record provides substantial evidence to support the ALJ's implicit determination that her carpal tunnel syndrome had resolved within twelve months of the alleged onset of the disabling impairment. *See* Tr. 9.[3]

---

[3] The record indicates that Toney went to the emergency room on June 5, 2007, with complaints that her hands felt numb, with sharp pain in both hands. (Tr. 179-180). However, the

Plaintiff also faults the ALJ for his failure to mention the results of a March 31, 2008, CT scan of her head that revealed small vessel changes in the perventricular white matter; no acute intracranial abnormality; and questionable abnormality involving the right parotid gland. (Tr. 227). However, no physician has associated this diagnostic test with any limitation of functioning. *See e.g.*, Tr. 214-216. Moreover, the test was ordered in response to plaintiff's fear that she had suffered a seizure when she woke up one morning, with a sore tongue, and a headache. *Id*. Nevertheless, the emergency room discharged her with a diagnosis of muscle contraction headaches, and prescribed Esgic – a combination of Acetaminophen, Butalbital, and Caffeine that is used to relieve tension headaches. *Id*.[4] The emergency room record further noted that plaintiff had no history of seizure activity. *Id*.

Plaintiff contends that the ALJ further erred by neglecting to discuss her regular visits to the Ophthalmology Clinic for treatment of glaucoma. However, there is substantial evidence to support the ALJ's implicit determination that this condition did not affect plaintiff's ability to work. Although on December 2, 2008, plaintiff apparently underwent surgery for glaucoma in her left eye,[5] by December 2, 2008, she demonstrated 20/20 vision in both eyes. (Tr. 240). Moreover, on February 24, 2009, she had 20/20 vision in the right eye, and 20/40 in the left eye. (Tr. 236).[6] At the hearing, plaintiff vaguely suggested that her poor vision was caused by

---

physician indicated that the condition was of mild severity, and prescribed a velcro splint. *Id*. Moreover, plaintiff does not contend that her impairments became disabling until September 10, 2007, when she was discharged from employment because she missed work to take care of her mother. (Tr. 102).

[4] *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/?term=Esgic last visited on 7/26/2011.

[5] Tr. 241-242.

[6] According to plaintiff, she was scheduled to undergo surgery for her other eye on February 24, 2009. (Tr. 22). On October 28, 2008, Toney's vision was 20/20 in the right eye and 20/25 in the left. (Tr. 245).

glaucoma. (Tr. 21-22). However, the medical records indicate that plaintiff's vision was, at times, perfect. Moreover, even with a visual acuity of 20/40 in both eyes, without correction, the consultative examiner imposed no resulting limitation of functioning. (Tr. 184-187). He also remarked upon her "marginal" effort during the eye examination. *Id*.

Plaintiff further faults the ALJ for stating that she did not take medication for her blood pressure. While the medical evidence indicates that as of September 15, 2008, plaintiff did not take any blood pressure medication (Tr. 198), by December 15, 2008, her treating physician had started her on blood pressure medicine. (Tr. 239). However, there is no evidence in the medical record that plaintiff's high blood pressure (hypertension) imposed any limitation of functioning. *Lofton v. Schweiker*, 653 F.2d 215, 218 (5th Cir. 1981) (substantial evidence supported ALJ's determination that claimant's hypertension was not severe, where claimant had taken medication prescribed for this condition for several years, with no indication in the medical record that the condition was not successfully treated by medication). In fact, when prompted at the hearing, plaintiff did not list hypertension as one of the causes of her alleged inability to work. (Tr. 21).[7]

Plaintiff further argues that medical treatment records indicate that her musculoskeletal impairments worsened subsequent to Dr. O'Neal's examination. According to the medical record, however, plaintiff's sole ongoing complaint stems from her allegations of low back or lumbar pain. (Tr. 238-239). Although the records reflect complaints of left shoulder pain, diagnostic tests have been within normal limits, and reflect no more than mild arthritic changes

---

[7] Relatedly, but neither addressed by the ALJ, nor raised by plaintiff, the medical record contains several references to plaintiff's obesity. *See e.g.*, Tr. 238-239. Although the ALJ is tasked with considering a claimant's obesity during the sequential evaluation process, SSR- 02- 1p, his failure to do so here is harmless where plaintiff's weight at the time that she was noted to be obese (Tr. 238-239), was roughly equivalent to her weight around the time that she was examined by Dr. O'Neal (Tr. 215), who, of course, determined that she had no limitation of functioning. *See* discussion, *supra*.

in the joint. (Tr. 228, 209). Likewise, x-rays of the lumbar spine were within normal limits, with negative straight leg raise, bilaterally. (Tr. 200). Moreover, plaintiff reported to Dr. O'Neal that she suffered from joint pain, including shoulder pain; nonetheless, he did not recognize any limitation of functioning. (Tr. 184-187). As did Dr. O'Neal, the medical treatment records all but universally recognize that plaintiff maintained a full range of motion in all extremities, despite her complaints. *See e.g.*, Tr. 238-239, 234, 236.[8]

## II. The ALJ Properly Evaluated Plaintiff's Subjective Complaints; His Associated Credibility Determination is Supported by Substantial Evidence

The ALJ stated in his decision that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments . . ." (Tr. 11). The ALJ's decision regarding the credibility of plaintiff's subjective complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ is not required to address every regulatory factor in his

---

[8] Plaintiff further argues that the ALJ erred when he stated that she could squat without difficulty. *Compare*, Tr. 11 and 27. While the ALJ indeed may have mis-characterized plaintiff's testimony, any error was harmless, when, as here, the ALJ expressly discounted plaintiff's testimony to the extent that it was inconsistent with his Step Two determination, and when there is substantial evidence in the medical record that she was able to squat without difficulty. *See* Tr. 185.

credibility determination. *Clary v. Barnhart*, 214 Fed. Appx. 479, 482 (5th Cir. Jan. 24, 2007) (unpubl.) (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). Moreover, the ALJ is entitled to find that the medical evidence is more persuasive than the claimant's own testimony. *Falco, supra*.

In this case, the ALJ found that plaintiff's complaints were not credible essentially because 1) they were inconsistent with her activities of daily living; and 2) their alleged severity was not fully supported by the medical record . (Tr. 11). Plaintiff contends that the ALJ's observation that plaintiff's activities of daily living were inconsistent with an ability to perform "any work-related activities" demonstrates the ALJ's misapplication of the "slight abnormality" standard for purposes of his Step Two determination. However, by filing applications for disability benefits, plaintiff effectively has alleged that she is unable to work. The ALJ's decision merely points out that plaintiff's activities of daily living are not consistent with her allegations of disability. Plaintiff's inconsistency undermines her credibility. *See also Anthony, supra* (claimant's ability to visit family and friends, prepare lunch, care for self, and drive car once or twice per week supported Commissioner's determination that plaintiff's allegations of pain did not constitute a severe impairment).

The ALJ discussed plaintiff's subjective complaints and the medical record. The medical record contains several instances where plaintiff complained of various conditions (e.g., seizures and joint pain), which were not supported by diagnostic testing, to the extent alleged. The ALJ's credibility analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective

complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, the ALJ ultimately grounded his decision upon the opinion of the consultative physician – the sole medical opinion regarding the effects of plaintiff's impairments. Such conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). Furthermore, this court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[9]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Toney was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be

---

[9] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.)*; Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

**AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 26th day of July 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE